Legislative history beginning on the floor. I have the pleasure to sit, not only in Washington, but from time to time elsewhere in the country, at the National Court. Accordingly, once a year we sit outside of Washington, and we're happy to be sitting in California this week, and in fact, San Jose today. We have six cases on the calendar this morning. Two government employee cases, two contract cases, one from the Court of Federal Claims, and one from the Board of Contract Appeals, a vaccine case from the Court of Claims, and a patent case from the District Court. The first case is Christian DeJohn v. The Department of Reality, 2006, 3159. Ms. Dondra, please proceed. May it please the Court, my name is Andrea Dondra, and I represent the petitioner in this case, Sergeant Christian DeJohn. Sergeant DeJohn seeks a petition from this Court to review the Merit System Protection Board's determinations on both his VOA and USARA claims against the United States Army. Mr. Dondra, how do you get by the Joseph case? Your Honor, the Joseph case is inabsent for two main reasons. The first is that in the Joseph case, Mr. Joseph was the person who applied on both lists. In our case, Sergeant DeJohn, the veteran, applied on the external list, and Murphy, who is the non-veteran, applied on both lists. In addition, the Joseph case was a VOA case, and Mr. Joseph got his full consideration. This Court rightly found he was interviewed, and they gave subsequent reasons why he wasn't the right guy. In our case, Sergeant DeJohn didn't get that opportunity. He was not interviewed, his references were not contacted, and Mr. Hendricks did not give any reasons why Mr. DeJohn wasn't the right person. But doesn't the Joseph case suggest that there's nothing untoward in that sort of procedure, in the same sort of procedure that was used in this case? Well, Your Honor, certainly the Joseph case says that when somebody applies on both lists and isn't selected from, they decide to use one list, there's nothing untoward about that. But in our case, Mr. Murphy was ranked below Sergeant DeJohn, and therefore, there was a benchmark between the two lists that showed that Sergeant DeJohn was qualified and was ranked above Mr. Murphy, so he should have at least gotten that submission. But they didn't hire off that list, they hired off the other list. Your Honor, that is true. However... Which is the same thing that happened in Joseph, and we found no difficulty with that. And so I'm wondering why that doesn't dispose of this case as well. Your Honor, it doesn't dispose of this case, because although there were two lists, there was only one vacancy. And certainly, this Court has found that veterans deserve full consideration, substantive consideration, of their applications. And that's something that Mr. DeJohn certainly didn't get. He was, as I said before, he wasn't interviewed, they didn't give any substantive reasons as to why his application didn't merit that sort of review. And they didn't talk about, as in the Dean case that was just decided last week, they didn't go through the road map of reasons why he wasn't qualified. In fact, the Army stipulated that he was qualified for the position. What about the USARA issue? Your Honor, the USARA issue is particularly important. And in fact, the Court found in the Dean last week that there's no showing of actual animus required in order to make a showing of discrimination under USARA. And the board below erred on that particular point, because it required that they show actual animus. USARA bars all discrimination that's based on a person's membership, service, or obligation for service. And certainly, discriminating against a veteran because he's trying to use his veteran's preference would qualify in that particular case. In this case, the only reason that they didn't consider Sergeant DeJohn was because he was using his veteran's preference. He would apply on the external list. They say that Mr. Murphy was their guy. They could have gotten him off the external list if they wanted to. But they didn't consider him. And they didn't consider Sergeant DeJohn either. So where was the animus with respect to your client? Well, Your Honor, we're arguing that there wasn't personal animus. But certainly, Mr. Henkers testified that he didn't want to use the external list. He doesn't like being constrained. I should clarify. He didn't say that he didn't want to use the external list. What he said was he's never used the external list. And then he doesn't like being constrained by the veteran's preference requirements. Well, but there's record evidence that there's a lot of veterans working in that department. What was it, 20 out of 55 employees are veterans. Your Honor, I wasn't aware of that particular number. And certainly, there's no documentary evidence. I know that Mr. Hendricks said that he had hired some veterans in his testimony. We never received any documentation of that and couldn't look at that. But we certainly know he didn't hire those veterans off the external list, which is what we're saying here today. He testified clearly that he's never hired them. Your Honor, certainly there is. But Congress has said that whenever the agency decides to go outside its own workforce, it has to fairly consider veterans. It has to give them full consideration. It has to allow them to compete. And that certainly did not happen in this case. The board also erred in Sergeant Dijon's case because under the USERRA standard, they didn't recognize all the circumstantial evidence that we provided to them. And they seemed to require only direct evidence. They harped on several times the fact that Mr. Hendricks said he didn't dislike veterans, that he didn't hire veterans. When, in fact, A, that's not the correct animus, as Your Honor pointed out. But also that that's just direct evidence. Whereas, in fact, this Court has found in Sheehan that discrimination is hardly ever open and notorious. But the burden is on your client, at least in the first instance, correct? Yes, Your Honor. And so point me to the best evidence that your client had with respect to the USERRA claim. Your Honor, the best evidence of discrimination in our USERRA claim is that, A, he was on the external list, and Mr. Murphy was on both lists. So they could have selected from either list. When we asked them why they didn't use the external list, they came up with a number of reasons, which changed over time. The first one was that they said that they always looked at the internal list first. But I don't understand it. You're saying that Mr. Murphy – I mean, the theory of your argument is that Mr. Murphy could have been picked on either list. That means you're acknowledging that your client would not and could not have gotten picked. Your Honor, we're saying that he deserved to have consideration. He deserved to be interviewed. He deserved to fairly compete for the position. Regardless of who they picked in the end, he certainly deserved to be able to compete for the position. And that wasn't given to them. And at the end of the day, they got rid of both lists, aren't they? Your Honor, that is true. But they had canceled the external list significantly earlier than they had canceled the internal list. But they offered it to Murphy. They did offer it to Murphy, but you turned it down. And they said they didn't want anybody if they couldn't have Murphy. That's correct. And isn't there, just looking objectively at the criteria, Murphy had been a librarian with significant experience over a long period of time. In terms of experience, there's maybe some justification for seeing Murphy as a superior candidate in terms of experience, right? Your Honor, there might be, but that was never argued below. In fact, nothing about Mr. Murphy's experience or lack thereof was discussed below. The argument below was that they had discretion. They never produced to us his resume. They never produced anything for any of the candidates. In fact, the first time I saw Mr. Murphy's resume was after I filed my appellate brief here. Well, what kind of relief are you seeking, though? I mean, we're in an instance that you would want them to redo the selection and give your client the appropriate consideration for a position which is no longer advertised and available. Well, Your Honor, that's certainly not Christian Dijon's fault. No, it's not his fault. What are the consequences? I mean, it's sort of a moot point. They should run this re-hot, re-advertised, even though you acknowledge at the end of the day, let's assume that they already made a decision not to even fill this position. So you're asking for a meaningless exercise, which doesn't result in anybody being picked in any of that, right? Well, Your Honor, I'm not sure that it wasn't, in fact, filled later on. And we don't know what the status is of that particular position at this point. But certainly, the relief that Sergeant Dijon seeks, in which this Court said he deserves if he prevails in this, is to be fairly considered for the position. Certainly, we also see monetary damages for the back pay that he would be owed as well as attorney's fees. Well, we wouldn't be entitled to any back pay unless it was determined that he otherwise would have had the position. Certainly, Your Honor. And we would expect that. You have plenty of time. You can continue or else you can save it. I think I'll save it, Your Honor. Thank you. May it please the Court. Todd Hughes for the Government. The MSPB correctly rejected Sergeant Dijon's claims under VO in New Sierra, and his decision should be affirmed. On the VO claim, this Court's precedent and Joseph's and the recently issued decision in Dean just last Friday, which we submitted through a 28-day letter yesterday, make it very clear that the simultaneous use of two different hiring authorities and the discretionary decision to use one over the other is perfectly legitimate and by itself doesn't constitute a VO violation. The government looks at the candidates and they say, well, compare Dijon to Murphy. And they say, well, this guy got five extra points. And so clearly, on merits, on purely merits, he was less qualified than the next guy. And they said, therefore, we're not going to use him. Is that a new Sierra violation? Not in itself. They have to show that the decision was motivated by military status. In that case, they may be deciding that even with— Well, aren't you kind of the same? I mean, you only get the five—only military people get the five points. And you only get the five points if you're a military person. So why isn't that aligned enough so that if you're discriminating against people because of the five-point preference, you don't like the fact that you're getting five points for nothing in your view? Why—how else can you make a Sierra violation? Well, there's two different ways to look at it. If you're discriminating against them purely because you don't like the preference and you don't want to give them the preference, then that could form the basis for a Sierra violation. If you're looking at the two individuals and deciding even though this person is ranked higher because of this veteran's preference points, the lower-ranked person is more uniquely suited for the job, then—and you try to get that person, that's not a Sierra violation. In fact, there's no— And you say, well, that didn't focus. Those five points weren't for merit. He's getting those simply as a freebie because he's a veteran. I'm not going to hire him. I'm not going to consider that. Is that a Sierra violation? It could be. And again, I think it goes to exactly what that means. If it means that I don't ever think veterans' preference points are—should be used, and I'm just going to disregard that, then yes, perhaps. But if what it really—what the person really needs is the person second on the list is more uniquely qualified, then no, it wouldn't be. And in fact, OPM has this—there's a regulation in place that actually allows an agency to go to OPM to seek passover authority. If getting a passover to avoid the veteran's preference points were an automatic Sierra violation, then that regulation itself would be a Sierra violation. But that's not the case. So the decision not to select a veteran who's at the top of the list is not in and of itself a Sierra violation. It has to be something more. It has to be that the military status alone was the motivating—substantial or motivating factor, not, as the board determined in this case, that Mr. Hendricks decided that Mr. Murphy was the best candidate for the job. My question is, what if you decide that you look at it and you discount entirely the five extra points because you can construe those as not being merit points but being for some other reason? Is that sufficient to introduce Sierra violations? I don't think so, Your Honor. I think there has to be something more. But in any event, that's not what happened here. What happened here was that the agency looked at the two lists and decided that it could best fill its needs by using the internal list. And under Joseph's and under the recent Dean case— What does that mean? It decided it could best fill its needs? I mean, on what basis? Well, it decided that the internal list allowed them to select Dr. Murphy. I'm not going to sit here and pretend that they didn't use the internal list because it was easier to select Dr. Murphy on the internal list than it was on the external list. That's certainly true. But under Dean and Joseph's, they're permitted to do that. So there's no P.O.A. violation, first of all. The whole argument that Mr. Dijon wasn't allowed to compete for this position, most of that is due to the fact that he didn't apply for the internal list. And towards the end, I'm still confused. How would that have affected the play here if he had indeed applied to both the external and the internal list? Well, if he had applied on the internal list, because of the requirements to give veterans an opportunity to compete, he likely would have been interviewed and given a chance to be considered for the job. He didn't apply, though. But in the internal list, there's no additional advantage for veterans. It's just simply the fact that they get to compete at all. Right. Well, that's a significant advantage, Your Honor, because otherwise it's an internal promotion list, which you can't apply to unless you're a current government employee. But because of the P.O.A. and the like, veterans who aren't current employees do get the benefit because of the veteran status to apply for an internal list. So that is the case. So if he had applied to the internal position, would the agency have been required to consider them all? So would they have been required to do it? Do they require to give everybody an interview? Are they required to interview veterans who appear on the internal list? They're not required. I don't believe you give everybody an interview. I suspect that they probably would have given him an interview because of his veteran status. Most agencies tend to do that as a matter of practice. Yeah. We don't know that. There's nothing in the records. No, but again, he didn't apply. So that question really isn't even before the court. If he had applied and the agency had not, you know, given him an interview at all or, you know, done something else to not give him a full affair opportunity to compete, then we might have a different case. But he didn't apply to the internal list. And without an application, there wasn't an opportunity for the agency to consider him at all. So no P.O.A. violation because they used the internal list. Mr. Houston? We've seen the Joseph case and now the Dean case and now this case. There seems to be a pattern of using two lists and I'll use a loaded word, manipulating the system. Is there a sense that you're manipulating the system to avoid these preferences by using two lists and then deciding, oh, do we have to interview them or not? And if they're not on both lists, we've got them out. And the sort of questions you've been going through with Judge Prost suggest that you could kind of navigate the manipulative course through the USERRA and other requirements. Well, I certainly won't dispute that it certainly could appear that that's what's happening here. But as Dean and Joseph make clear, this practice is legal under V.O.A. Unless there's actually some – under USERRA, you show some kind of debilitary status. Under V.O.A., it's not illegal. Now, yes, it might be better for a parent to stay for an agency instead of doing it simultaneously to do one after the other, which would get rid of the appearance of problems. But I suspect the reason agencies do it simultaneously is it speeds up the hiring process. The federal government hiring process is already lengthy and complicated enough. To just avoid appearance issues, they said, well, first we're going to go to the internal list to see if we get any good candidates. And if we don't, we'll cancel that one and go to the external one. By doing them simultaneously, they can cast a wide net and then they can use the one which best suits their hiring need. Yes, in some instances like this, it means that they're using the internal list to select a candidate they couldn't have gotten on the external list without getting O.P.M. passport authority. But there's nothing illegal under V.O.A. in doing that. So turning briefly to the USERRA claim, they must be applied to proper standard here. There's nothing to suggest that they require Mr. Dijon to show animus towards veterans. They said they cited the proper standard. They did discuss animus evidence in determining that he didn't meet his burden. But they didn't use that only. They relied on that. They were looking for evidence of discrimination and they didn't find any. That's correct, Your Honor. They looked at Mr. Hendricks' testimony, who actually was the deciding official, who testified, one, that he preferred using internal list because you've got people in similar conditions to the one they were seeking O.P.M. already or with experience, that he himself had hired four veterans and had five veterans currently working for him, which the board found in evidence, you know, intended to discriminate against veterans. And the other evidence cited in our brief. So the board made a factual finding that Mr. Dijon didn't meet his burden of showing preponderance. And that factual finding is at the very least supported by substantial evidence. I think it's supported by even more than substantial evidence. There's just no evidence sufficient to overturn that factual finding by the board. And, again, there's some circumstantial evidence that Mr. Dijon cites, too. But, again, that's a weighing question that the board had the responsibility to do, and they made that factual finding that's certainly supported by substantial evidence. This whole case is a little unusual. Wasn't there a connection with the USAREC claim that the board reached down and under-overturned the challenge? Maybe they found new respect for credibility? You're correct, Your Honor. They did overturn the demeanor-based credibility determination of Colonel Hendricks because they found some of his testimony inconsistent. But the fact that they overturned a demeanor-based credibility determination, which would be virtually unreviewable, but then still made a factual finding. Well, it's obviously not unreviewable because they reviewed it and flipped it. Right. Right, in this case. So, obviously, we're not relying on any kind of credibility determination here. But just the fact that they didn't find his testimony, his in-person testimony in the hearing, entitled to that high level of deference because there were some inconsistencies, doesn't mean they can't look in the record and look at his testimony otherwise for a support for their factual conclusion. His testimony isn't entitled to any deference, but it's certainly a piece of primitive evidence that they can use to support their factual finding. And, again, it's also a piece of evidence, primitive evidence, that this court can rely on. So, wait, you're suggesting that the board, therefore, given its conclusions with respect to a portion of the record, didn't give deference to any of the testimony. And so now we're supposed to be giving deference to the board's non-deference? I'm not sure what that means. No, let me clarify. I was perhaps a little bit confusing. I don't think the board rejected Mr. Hendricks' testimony in total. What it said was, we're not going to give a special deference based upon a demeanor-based credibility finding, which it would have entitled to a higher level of deference. But just because it rejects a demeanor-based credibility determination and giving us a special deference doesn't mean that the board rejected the testimony in total. In fact, their decision makes it clear that they didn't reject the testimony in total because they cited numerous pieces of Mr. Hendricks' deposition testimony in support of the factual conclusion. So that certainly was an appropriate thing for the board to do. The board has wide discretion in what kind of evidence it uses to support its factual determinations. For these reasons, the board's decision should be affirmed. Thank you. Thank you. Your Honor, I'd just like to address a few issues that were raised during my time this time. The first is that I think it's very important to note that the agency has admitted that it used the internal list to avoid the veteran's preference. The fact that somebody who might be uniquely qualified who was ranked beneath a veteran on the external list is not reason to then go and try and avoid the veteran's preference. In fact, Congress itself built in the Passover provision specifically to address that issue. Are you addressing the USERA claim here? Your Honor, I'm addressing the VOA claim, but they're sort of intertwined. There's intertwining issues. And certainly I think that if somebody is discriminated against, if the only reason that they're not considered is because they have the veteran's preference and they want to go to the internal list, regardless of whether or not they were considered, that would be a USERA violation. But in addition to that, in our case, Sergeant DeJohn was not considered. Now on the USERA point, the MSPB judge specifically found that Mr. Hendricks himself, a veteran, had routinely hired other veterans. Colonel Hendricks, as a matter of fact, right? Yes, Your Honor. That is correct. Does that sort of factual finding give you a very difficult burden to overcome? No, sir. It doesn't, Your Honor. And the reason why is that we're not arguing that he hated veterans. We're arguing that he doesn't like to be constrained and he discriminated against our client because our client applied on the external list and was there for using his veteran's preference. It's the same thing as somebody who would be an employer out there who really supports the military and reservists but doesn't want to hire reservists because they might get recalled and they have to hold their job open. They don't hate the military any more than Mr. or Colonel Hendricks does. But they don't want to comply with the law. And so therefore, they're not going to go there. And that's discrimination. But it's hard to argue that he discriminated against veterans when he hired other veterans. Your Honor, our argument is that he discriminated against veterans utilizing the veteran's preference. And that goes along with, as you, Sarah, says, membership, service, or obligation for service. And certainly it falls in those three categories. In addition, my opponent is arguing that it would be a factual finding on the new Sarah claim. But our argument is that they used the wrong standards, that it's got to be a motivating or substantial factor in the adverse employment decision. And it was in this particular case, as they admitted. So that's a question of law that can be reviewed de novo. He also argued that there was no VOA violation because Sergeant DeJohn didn't apply on the internal list. The simple fact is that VOA grants the right to compete. There was one vacancy here. And there's certainly no requirement that Sergeant DeJohn apply on both lists in order to be fairly considered. He wasn't considered at all. The other thing, there was some speculation regarding if he had applied on the internal list, he would have gotten an interview. In fact, there were other veterans who applied on the list. And I can point you to Appendix A259. And it lists a veteran down at the bottom, Conrad Bruce. The record shows that the only person who was interviewed for this position was Mr. Murphy. If there are no further questions, I'll sit down. Thank you, Ms. DeJohn. We'll take the case under audit. Thank you.